UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ERIC C. STONEBRAKER,<br><br>　　　　　Plaintiff,<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. 2:16-cv-02078-GMN-GWF<br><br>**REPORT AND RECOMMENDATION**<br><br>**Re: Motion for Reversal or Remand (ECF No. 20)** |

This case involves judicial review of administrative action by the Commissioner of Social Security denying Plaintiff's claim for disability benefits under Titles II and XVI of the Social Security Act. Plaintiff's Amended Complaint (ECF No. 8) was filed on March 6, 2017. Defendant's Answer (ECF No. 15) was filed on May 22, 2017. Plaintiff's Motion for Reversal or Remand (ECF No. 20) was filed on August 9, 2017, and the Commissioner's Cross-Motion to Affirm and Opposition to Plaintiff's Motion to Remand (ECF No. 23) was filed on September 8, 2017. No reply brief was filed. This matter has been referred to the undersigned magistrate judge for a report of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).

## BACKGROUND

**A. Procedural History**

Plaintiff Eric Stonebraker previously filed a complaint for judicial review of the denial of his claim for Social Security disability benefits. *See* Stonebraker v. Colvin, Case No. 2:13-cv-01238-APG-GWF. On June 5, 2014, the undersigned filed a report and recommendation that the

1

denial of Plaintiff's claim be reversed and that the case be remanded to the Social Security Administration for further hearing and decision. *Findings and Recommendation* (ECF No. 20). The findings and recommendation were accepted by the District Judge on July 28, 2014, and the case was remanded to the agency. *Order* (ECF No. 21). On remand, Plaintiff's claim was assigned to a different Administrative Law Judge (ALJ) who conducted a hearing on August 25, 2015. Administrative Record ("AR") 387-405. The ALJ issued his decision on November 19, 2015, again finding that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 1, 2008, the alleged onset date of his disability, through September 30, 2010, the last date he was insured under the Social Security Act. AR 362-379. The Appeals Council denied Plaintiff's request for review on June 30, 2016. AR 354-358. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

**B. Factual Background**

The factual background in the Court's Findings and Recommendation (ECF No. 20) in Case No. 2:13-cv-1238-APG-GWF is incorporated in its entirety as if fully set forth herein.

Plaintiff alleged that he became disabled on July 1, 2008 due to severe asthma, bronchitis and high blood pressure (hypertension). Prior to his alleged disability, Plaintiff worked in a real estate office and taught piano lessons. His last job as a data entry clerk ended in March 2008 when the project, on which he was employed, was terminated. He applied for other jobs, but was not hired. AR 44, 140. Plaintiff's primary basis for claiming disability was his severe asthma which made it difficult for him to breath and caused him to feel weak and fatigued. He testified at the August 3, 2011 hearing that he performed breathing treatments on a nebulizer every three hours throughout the day. Each treatment lasted ten to fifteen minutes. The Albuterol medicine made him shake, and it took about fifteen to twenty minutes for the symptoms to subside. He also stated that the treatments sometimes "wiped him out," so that he would just sit there and sleep for about thirty minutes. AR 47. Plaintiff performed a minimum of six to seven breathing treatments during a 24 hour day. He took his first daily treatment at 6:00 A.M, and the last one before he went to bed at 10:00 P.M. He also did one at around 2:00 A.M. Plaintiff used inhalers, but they did not work well for him. AR 49. He testified that talking more than fifteen

minutes, walking more than five minutes, and bending over would cause him to feel tight and short of breath. He could not climb stairs. He could no longer play the piano "because I get tight after 10, 15 minutes of movement." He became out of breath if he lifted anything heavier than a gallon of milk. AR 50

Plaintiff did not believe that he could perform an office job because he was "constantly" doing breathing treatments and his asthma attacks came on all day long. "It would be too much talking, too much normal getting up and down, running errands, normal office work, going to the filing cabinets, prepping the copy machine paper, too much lifting." AR 45. He also could not perform a job that required frequent use of the telephone. The ALJ asked if he could do a desk job that didn't require him to use the telephone and in which he could work on his own. Plaintiff testified that his last job as a data entry clerk was that kind of job. He was required to go to the filing cabinet to get files, and enter data into a computer. "The paper dust ate my lungs up so I'd fill up with mucus. My allergies have gotten extremely bad since then." AR 45. He had to avoid exposure to dust and fumes. "Windy days I have to wear a face mask if I go out, strong fumes make me instantly tight whether its cleaning, strong perfumes, hand lotions." AR 51. He stated, for example, that he suffered a severe asthma attack and was hospitalized after being exposed to his mother's citrus hand lotion.[1] AR 51. Plaintiff testified that he would need three to four additional breaks during a workday (beyond those allowed by most employers) to perform his breathing treatments. AR 52.

During the August 3, 2011 hearing, the ALJ asked the vocational expert to assume a hypothetical individual "that can lift 10 pounds, sit for six hours in an eight hour day, stand and walk for two hours in an eight hour day. It has to be a job that has low exposure to dust and industrial pollutants and that requires . . . minimal talking." AR 54. The vocational expert testified that the individual could perform Plaintiff's past work as a data entry clerk and piano

---

[1] Plaintiff was hospitalized four days following an episode of severe shortness of breath. AR 265-296. The April 2009 hospital discharge diagnosis included asthma exacerbation, left lower lobe pneumonia, and probable chronic obstructive pulmonary disease. AR 265.

teacher. The individual could not perform the data entry clerk job, however, if he was required to take three or four additional breaks during the workday. AR 54.

Plaintiff's testimony at the second hearing on August 25, 2015 was substantially similar to his testimony at the first hearing. He stated that he could not work because of his asthma. "I just can't breathe. All my jobs mostly have been customer service. I have a hard time breathing throughout the day. I take multiple breathing treatments and its only progressed each year." AR 390. He stated that the paper dust he encountered as a data entry clerk aggravated his condition. "It was very dusty there in our office. It was a pretty big room. Lifting files to take to my desk to do the indexing aggravated my asthma a lot." AR 392. Dr. Prabhu performed a scratch test and found that he was allergic to paper dust. He was also bothered by Mulberry trees, and strong cleaning chemicals such as bleach or ammonia. AR 393-394.

Plaintiff testified that he normally took twelve breathing treatments during a 24-hour day, and might take up to an additional five treatments if he could not "get loosened." After taking a treatment, he was dizzy, weak, and exhausted. AR 393. He did not have significant difficulty sitting for an extended time period, and he could stand in one place for thirty minutes at a time. He was only able to walk short distances, however, before becoming breathless, and he could not lift more than ten pounds. AR 395-396. He had not been hospitalized since the prior hearing in 2011. Plaintiff testified that the hospital would give him the same treatment that he gave himself at home. "If my treatment doesn't work I would go to the ER. They would still give me a treatment and then hook me up to the liquid steroids." AR 396.

The ALJ asked the vocational expert at the second hearing to assume a hypothetical younger individual with at least a high school education and the same work history as Plaintiff. The individual would be limited to sedentary work as defined in the Dictionary of Occupational Titles ("DOT") and the Social Security regulations. Standing and walking would be limited to up to one hour. The person could occasionally climb stairs or ramps, but could not climb ladders, ropes or scaffolds. He could occasionally balance, stoop and kneel, but could not crouch or crawl. He would be capable of frequent fingering and handling, pushing and pulling, and use of foot controls. He could not be exposed to dust, fumes, gases, poor ventilation, temperature

extremes, humidity or wetness. The vocational expert testified that an individual with those limitations could perform Plaintiff's past work as a data entry clerk as defined in the DOT, but not as performed by Plaintiff. AR 400. (The job as performed by Plaintiff was at the medium exertional level.) The vocational expert stated that if the individual was limited to a total work time of six hours per day, he would not be employable. He would also not be able to work if he was exposed to excessive paper dust. AR 402-403.

**C. The ALJ's Decision**

The ALJ followed the five-step sequential process set forth in 20 C.F.R. § 404.1520(a)-(f) to determine whether Plaintiff was disabled. He found that Plaintiff last met the insured status requirements of the Social Security Act on September 10, 2010, and that he had not engaged in substantial gainful activity since July 1, 2008. AR 364. At step two, he found that Plaintiff had the following severe impairments: asthma/chronic obstructive pulmonary disease (COPD), chronic bronchitis, chronic sinusitis, obstructive sleep apnea, and obesity. AR 364. At step three, the ALJ found that Plaintiff's impairments did not meet and were not medically equivalent to any condition listed in Appendix 1, Subpart P, of 20 C.R.F. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. AR 365. The ALJ noted that Plaintiff did not allege that his impairments met or medically equaled one of the listed impairments. He nevertheless provided an extensive analysis of whether Plaintiff's COPD and asthma met the requirements of Listings 3.02 and 3.03. AR 365-371.

Prior to step four of the process, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work with the following restrictions: Plaintiff was capable of continuous standing for up to thirty minutes; continuous walking for up to one hour; for a total of two hours standing or walking in an 8-hour workday. He could occasionally climb stairs and ramps, balance, stoop and kneel; he could never climb ladders, ropes or scaffolds, or crouch or crawl. Plaintiff could frequently push/pull, finger, handle, reach in all directions, and operate foot controls, bilaterally. He needed to avoid all exposure to dust, fumes, gases, poor ventilation, humidity and wetness, temperature extremes, and workplace hazards such as unprotected heights and dangerous moving machinery. AR 371. Based on this residual functional capacity, the ALJ

found at step five that Plaintiff could perform his past jobs as a data entry clerk and office manager as those jobs are generally performed in the national economy. AR 378.

While acknowledging that Plaintiff suffered from severe asthma, the ALJ found that the alleged frequency and severity of his asthma attacks was inconsistent with and not entirely supported by the objective record. AR 372. Plaintiff stated in a November 30, 2009 asthma questionnaire that he suffered from daily asthma attacks. AR 372, 127. However, he stated in an undated disability report that he had "several asthma attacks in a month." AR 373, 130. He reportedly told Dr. Christensen on June 26, 2012 that his asthma attacks averaged "several times per month and once every few months." AR 373, 577. The ALJ found that these statements were inconsistent with each other, and with the medical records because "[d]ocumented complaints of significant respiratory problems were relatively limited, particularly prior to the last date insured." AR 373. Plaintiff alleged that he was allergic to paper and paper dust, and claimed that Dr. Prabhu had diagnosed a paper allergy. The ALJ noted, however, that there was no mention of a paper allergy in Dr. Prabhu's records or the other medical records. Allergy testing was positive for numerous antigens, but not for paper or paper dust. Plaintiff's self-reported asthma triggers included wind, weather changes, cigarette smoke, cold, dust and sinusitis, but not paper or paper dust. AR 373.

The ALJ found that documented complaints of significant respiratory problems or asthma attacks were relatively limited between July 1, 2008 and September 30, 2010. On August 20, 2008, Plaintiff saw Dr. Prabhu for prescription refills, and reported no specific or significant complaints. His physical examination was unremarkable. AR 373. On October 16, 2008, Plaintiff complained of chest tightness, wheezing, and difficulty breathing, and stated that he was having an asthma attack. AR 373. On November 7, 2008, Plaintiff reported severe shortness of breath, chest tightness, and wheezing. He was in moderate distress during this visit, and was given an SVN treatment, subcutaneous Brethine, and IM Depo-Medrol. The ALJ noted, however, that Plaintiff reported that he had run out of medications, and that non-compliance was noted in his record. AR 374. Plaintiff was admitted to the hospital on April 9, 2009 for an acute asthma exacerbation, but there were no further documented asthma attacks between that

1   hospitalization and September 30, 2010.  The ALJ noted that Plaintiff was last seen by Dr.
2   Prabhu on May 18, 2009.²  AR 374.

3         The ALJ stated that most of the medical evidence pertained to the period after September
4   30, 2010, and was not particularly relevant.  He found, however, that those records tended to
5   support a finding that Plaintiff was not disabled.  Treatment continued to be routine, with
6   numerous gaps in treatment.  Physical examinations were largely unremarkable, limited to
7   occasional rhonchi and wheezes.  Oxygen saturation levels, both during and after the relevant
8   period, were within normal limits or slightly below normal, but not at hypoxemic levels.
9   Plaintiff had not gone to the emergency room, and it did not appear that he had received CPAP
10  therapy.  AR 374.  The ALJ again noted that while the pulmonary function tests were below
11  predicted values, they were above those required to meet or equal a listing.  The pulmonary test
12  results did not support a finding of disability.  AR 373, 375.

13        The ALJ afforded little weight to Dr. Prabhu's May 8, 2009 opinion that Plaintiff was
14  totally disabled because it was "conclusive" and did not provide any specific limitations.  Most
15  importantly, it was not consistent with the objective medical evidence, including Dr. Prabhu's
16  own treatment records.  The ALJ once again cited the pulmonary function tests results, that
17  treatment was relatively limited, and that at least some of the claimant's reported complaints
18  were due to noncompliance in taking prescribed medication.  AR 376. The ALJ noted that Dr.
19  Prabhu later completed a March 2015 medical source statement in which he stated that Plaintiff
20  gets short of breath on minimal exertion, but that he had a residual functional capacity consistent
21  with the ability to perform sedentary work with some additional limitations.  Although this
22  opinion was rendered four and a half years after the last date insured, the ALJ afforded it "greater
23  weight" because it was more detailed and provided specific limitations, "most of which are
24  identical to those included in claimant's residual functional capacity."  The ALJ, however, did
25  not accept Dr. Prabhu's opinion that Plaintiff was unable to drive a motor vehicle or had
26  restrictions regarding noise and vibration.  AR 377.

---

² On that date, Dr. Prabhu opined that Plaintiff was totally disabled due to severe persistent asthma. AR 249.

7

The ALJ reviewed the opinions of state agency physicians Dr. A. Ahmed and Dr. Karyn Doddy which were based on their review of the medical records. Dr. Ahmed found that Plaintiff was capable of performing sedentary work, with some limitations. The ALJ noted that it was interesting that Dr. Ahmed did not indicate any restrictions regarding exposure to fumes, odors, dust, etc. AR 377. Dr. Doddy opined that Plaintiff had a greater residual functional capacity, but stated that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. AR 377, 304-311. The ALJ accorded some weight to Dr. Ahmed's and Dr. Doddy's opinions, but stated that he gave the Plaintiff "the benefit of the doubt," in finding that he had a more restricted residual functional capacity. AR 377.

The ALJ accorded little weight to the opinion of Dr. James Christensen, who began treating Plaintiff on November 28, 2011, and who stated in a May 27, 2015 questionnaire that Plaintiff could only sit, stand and/or walk for a total of six hours in an 8-hour workday.[3] AR 377, 833-834. The ALJ noted that Dr. Christensen did not start treating Plaintiff until more than a year after his last date insured. He found that Dr. Christensen's opinion that Plaintiff could sit for six hours, and stand and walk for two hours, was inconsistent with his opinion that Plaintiff could only sit, stand or walk for a total of six hours in an 8-hour workday. He also found that Dr. Christensen's opinion was not consistent with the overall unremarkable findings and treatment records before and after September 30, 2010. AR 378.

Finally, the ALJ gave little weight to the June 15, 2015 third party statement of Defendant's friend who observed him taking breathing treatments during church services, and had seen him struggle to catch his breath and be unable to participate in many activities. AR 378.

## DISCUSSION

### I. Standard of Review

A federal court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the

---

[3] The ALJ listed the year for this questionnaire as 2013. Dr. Christensen's records indicate, however, that it was completed in 2015. AR 835-836.

proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (quoting *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)); *see also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id*.

. . .

## II. Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that: (a) he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A). The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform a significant number of other jobs that exist in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007). Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). The ALJ correctly set forth five steps in his decision, AR 363-364, and they will not be repeated here.

**III. Whether the ALJ erred in rejecting the credibility of Plaintiff's testimony regarding the severity of his symptoms.**

In deciding whether a claimant's testimony regarding subjective pain or other symptoms is credible, the ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. The claimant is not required to show that his impairment could be reasonably expected to cause the severity of the symptoms he alleges. He need only show that it could have reasonably caused some degree of the symptom. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). If the claimant satisfies the first step, then, absent evidence of malingering, the ALJ can only reject his testimony about the severity of his symptoms by offering specific, clear and convincing reasons for doing so. *Id.* at 1014-15.

An ALJ may not discredit a claimant's subjective testimony regarding the severity of his symptoms based solely on the ground that it is not supported by the objective medical evidence. To find a claimant not credible, the ALJ must rely on reasons unrelated to the subjective testimony, such as a reputation for dishonesty, or conflicts between his testimony and his own conduct, or internal contradictions in his testimony. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006). *See also* Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

In this case, the ALJ found that Plaintiff's asthma and COPD could be expected to cause some of his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. AR 372. The ALJ's credibility determination was based in substantial part on his finding that the objective medical evidence did not support Plaintiff's testimony regarding the severity of his symptoms. The ALJ engaged in an extensive examination of whether Plaintiff's asthma or COPD met or equaled a listing even though Plaintiff had not claimed that his impairments met a listing. The ALJ's repeated reference to the failure to satisfy listing levels appeared to be directed at demonstrating that Plaintiff's subjective symptoms were not supported by the objective medical evidence.

The ALJ pointed to other circumstances that supported his assessment of Plaintiff's credibility. He noted that Plaintiff stated in an asthma questionnaire that he suffered daily asthma attacks, but stated elsewhere that he had several asthma attacks a month. While the ALJ was correct in noting the inconsistency in these statements, the difference between daily asthma attacks and several asthma attacks in a month does not demonstrate a conflict in testimony sufficient to discredit Plaintiff's testimony about the severity of his symptoms. Several severe asthma attacks per month would reasonably render Plaintiff incapable of working full time. The difference between daily asthma attacks versus several in a month, also did not discredit Plaintiff's testimony he was required to take breathing treatments throughout the day in an effort to avoid the onset of an asthma attack.

The ALJ also discounted Plaintiff's credibility based on his assertion that he is allergic to paper and paper dust, and that Dr. Prabhu had diagnosed a "paper allergy." As the ALJ correctly stated, there is no medical record stating that Plaintiff was specifically diagnosed with an allergy to paper or paper dust. There also is nothing in the record, however, that refutes Plaintiff's testimony that he was exposed to excessive paper dust during his employment as a data entry clerk. The record shows that he began that job in June 2007, and started treatment with Dr. Prabhu's clinic five months later in November 2007. AR 140, 223. Plaintiff told Dr. Parimi on November 28, 2007 that he was having increased difficulty breathing and his asthma was flaring up. AR 226. Dr. Prabhu stated on December 12, 2007 that Plaintiff was presenting with a history of "refractory asthma" of four months duration, which correlated with Plaintiff's employment as a data entry clerk. AR 229. It is certainly possible that Dr. Prabhu told Plaintiff's that his asthma was caused or aggravated by exposure to paper dust in the workplace. Even assuming that Plaintiff was incorrect in claiming that he had been diagnosed with an allergy to paper or paper dust, the record does not provide a clear and convincing basis for discrediting his testimony regarding the severity of his symptoms.

There appeared to be some improvement in Plaintiff's condition between December 2007 and August 20, 2008. He reported on January 18, 2008 that his asthma was under a little better control. He was still experiencing chest tightness and was prescribed additional medication. AR 233. In February 2008, Plaintiff complained of a persistent cough with congestion for four or five days. AR 236. He was seen at Fremont Medical Center on April 1, 2008 and June 23, 2008 for acute bronchitis and extrinsic asthma. AR 183-188. On August 20, 2008, he saw Dr. Prabhu for a refill of his asthma prescriptions. He had no complaints at that time, was not in acute distress, and his lungs were clear to auscultation. AR 239-241. However, Plaintiff's asthma symptoms were significantly worse on October 16, 2008 when he reported that his chest was tight; he was finding it hard to breath; and he was having an asthma attack. AR 242. On November 7, 2008, Dr. Prabhu diagnosed Plaintiff with severe asthma. He further stated: "We are trying to obtain Xolair for him. Unfortunately for him, he ran out of all his medications and

1   is having severe shortness of breath with chest tightness and wheezing." AR 245.  He also noted
2   that Plaintiff was noncompliant with treatment because he "ran out of his medications." AR 247.
3         The ALJ did not explicitly discredit Plaintiff's testimony on the grounds that he was not
4   compliant with prescribed medical treatment.[4]  In rejecting Dr. Prabhu's May 2009 opinion that
5   Plaintiff was totally disabled, however, the ALJ noted that "at least some of the claimant's
6   reported complaints were due to non-compliance." AR 376.  The arguable implication of this
7   statement is that Plaintiff's symptoms would not have been as severe if he took the prescribed
8   medication.  There is no indication that Plaintiff's noncompliance with prescribed medication
9   was more than a temporary incident.  Dr. Prabhu prescribed medication on November 7, 2008,
10  and there is no evidence that Plaintiff was out of compliance thereafter.  Notwithstanding his
11  apparent compliance with treatment, Plaintiff was admitted to the hospital in April 2009 for
12  severe asthma, probable COPD, and pneumonia, AR 265-282, and Dr. Prabhu declared him to be
13  totally disabled on May 18, 2009.  AR 249.  It is unknown why Plaintiff did not continue to treat
14  with Dr. Prabhu after that date.  He was subsequently seen at Guadalupe Medical Centers and
15  Canyon Gate Medical Group in 2010 and the first part of 2011 for refills of his medication.  The
16  handwritten notes prepared by those providers are brief and illegible.
17        The ALJ stated that Plaintiff's treatment records after September 30, 2010 were irrelevant
18  to the issue of disability, but he nevertheless evaluated those records, including the residual
19  functional capacity assessments made by Dr. Prabhu and Dr. Christensen in 2015.  Dr.
20  Christensen stated in his initial office visit note on November 28, 2012 that Plaintiff's current
21  asthma symptoms included chest tightness, cough and wheezing.  The frequency of attacks
22  averaged several times per month and once every few months.  Asthma medication included
23  MDI Proventil HFA and Spiriva.  Plaintiff's quality of life since his last treatment was deemed to
24  have remained the same.  Plaintiff told Dr. Christensen that asthma triggers included wind,
25  weather changes, upper respiratory illnesses, cigarette smoke, cold air, dust and sinusitis.

---

[4] Plaintiff testified that after he stopped working and no longer had insurance, he was not able to obtain required medication. AR 43. A claimant's testimony may not be discredited based on his failure to pursue prescribed medical treatment if the claimant was unable to pay for it. *Orne v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

1 Plaintiff claimed to be in compliance with his medication regimen. AR 609. In addition to
2 prescribing medication, Dr. Christensen recommended the following environmental controls: (1)
3 keep doors and windows closed at all times; (2) change filters monthly (3) keep pets outside or
4 out of patient's bedroom by closing the door at all times; (4) exercise in the evenings; (5)
5 shower, wash hair and change clothes after being outside; (6) use a cool evaporative humidifier
6 in bedroom at night while sleeping; and (7) identify and avoid asthma triggers. Although this
7 visit occurred fourteen months after the last date insured, Plaintiff's condition appeared to be
8 substantially the same as that reported in the records of Dr Prabhu and his associates in 2007 to
9 2009. The environmental controls that Dr. Christensen recommended did not necessarily
10 preclude Plaintiff from being employed. They indicate, however, that it would have been
11 difficult for Plaintiff to avoid asthma triggers while maintaining full time employment.

12 The ALJ did not specifically address the credibility of Plaintiff's testimony about the
13 number of breathing treatments that he was required to take during the daytime, or the effect that
14 that those treatments had on his ability to work. The ALJ arguably concluded that Plaintiff did
15 not require the frequency of breathing treatments he claimed, based on the lack of support for the
16 alleged severity of his symptoms. The ALJ's failure to address this testimony, however, raises
17 additional doubt as to the validity of his credibility determination. The credibility issues raised
18 by the ALJ did not constitute clear and convincing reasons for rejecting the credibility of
19 Plaintiff's testimony regarding the severity of his symptoms. The record, as a whole, supports
20 the conclusion that Plaintiff's severe asthma symptoms and the treatment that he was required to
21 take to avoid or cope with those symptoms prevented him from engaging in gainful employment
22 between July 1, 2018 and September 30, 2010.

**IV. Whether the ALJ erred in rejecting the opinions of Plaintiff's treating physicians.**

25 As a general rule, more weight should be given to the opinion of a treating physician than
26 to the opinions of physicians who do not treat the claimant. *Garrison v. Colvin*, 759 F.3d at
27 1012; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of an examining physician
28 is also generally entitled to greater weight than that of a non-examining physician. *Id.*, at 1012,

citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The weight afforded to a non-examining physician's opinion depends on the degree to which he provides supporting explanation for his opinions. *Id.* 20 C.F.R. § 404.1527(c)(2) states that a treating physician is likely to be "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultive examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). If the treating physician's opinion on the nature and severity of the claimant's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record, it will be given controlling weight. *Id.*

Even if the treating physician's opinion is not given controlling weight, the ALJ is required to consider certain factors in determining the weight to be given to the opinion. 20 C.F.R. § 404.1527(c)(2). These factors include (i) the length of the treatment relationship and the frequency of examination and (ii) the nature and extent of the treatment relationship. *Id.* In evaluating the opinions of treating, examining and nonexamining physicians, the ALJ should consider the extent to which the opinion is supported by relevant evidence, particularly medical signs and findings; the extent to which the opinion is consistent with the record as a whole; whether the physician is a specialist opining within the area of his specialty; and other factors, including the physician's familiarity with Social Security disability programs and their evidentiary requirements. 20 C.F.R. § 404.1527(c)(3)–(6).

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, the ALJ may only reject it by providing specific and legitimate reasons supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d at 1012. "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight ... even if it does not meet the test for controlling weight.' " *Id.*, quoting *Orne v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007). To satisfy the substantial evidence requirement, the ALJ should set forth a detailed and thorough summary of the facts and conflicting clinical

1  evidence, state his interpretations thereof, and make findings. *Id.* (citing *Reddick v. Chater*, 157
2  F.3d 715, 725 (9th Cir. 1998)). "'The ALJ must do more than state conclusions. He must set
3  forth his own interpretations and explain why they, rather than the doctors' are correct.'" *Id.* The
4  ALJ is not bound by a treating physician's opinion that a patient is unable to work. *McLeod v.*
5  *Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). While a treating physician's evaluation of a patient's
6  ability to work may be useful in the disability determination, a treating physician ordinarily does
7  not consult a vocational consultant or have the expertise of one. "An impairment is a purely
8  medical condition. A disability is an administrative determination of how an impairment in
9  relation to education, age, technological, economic, and social factors, affects the ability to
10 engage in gainful activity." The law reserves the disability determination to the Commissioner.
11 *Id.* at 884 (citing 20 C.F.R. § 404.1527(e)(1)). *See also Kibble v. Comm'r*, 584 Fed.Appx. 717,
12 719 (9th Cir. Sept. 2, 2014) (unpublished memorandum).

13  Dr. Prabhu's May 18, 2009 opinion that Plaintiff was totally and permanently disabled
14 was broad and conclusory. He did not provide an onset date for Plaintiff's disability; nor did he
15 support his opinion with any discussion of the level of Plaintiff's symptoms, or how they
16 affected his activities of daily living or ability to perform work related tasks. Given these
17 inadequacies, the ALJs were not required to accord Dr. Prabhu's opinion controlling weight.
18 The second ALJ's near total rejection of Dr. Prabhu's opinion was based on the ALJ's evaluation
19 of the objective medical evidence and his conclusion that Plaintiff's symptoms were not as
20 severe as he alleged. Because the ALJ failed to provide clear and convincing reasons for
21 rejecting the credibility of Plaintiff's testimony, his decision to accord little or no weight to Dr.
22 Prabhu's May 18, 2009 opinion was not reasonable.

23  The second ALJ accorded "some weight" to Dr. Ahmed's opinion regarding Plaintiff's
24 residual functional capacity. This determination is also questionable. Dr. Ahmed completed a
25 residual functional capacity assessment checklist form by checking the applicable boxes. He did
26 not provide even a brief narrative statement in support of his assessment. Moreover, Dr. Ahmed
27 erroneously indicated that there was no treating or examining source statement in the record
28 regarding the claimant's physical capacities. AR 303. The record, in fact, contained Dr.

1  Prabhu's May 18, 2009 opinion. Because Dr. Ahmed did not identify Dr. Prabhu's opinion, he
2  did not explain why his opinion differed from that of Dr. Prabhu. Dr. Ahmed also did not check
3  any box in regard to whether Plaintiff had environmental limitations to fumes, odors, dusts,
4  gases, poor ventilation, etc. AR 302. This may well have been an oversight by Dr. Ahmed,
5  since he was apparently aware of Plaintiff's primary diagnosis of severe, persistent asthma. AR
6  299. The ALJ's decision to accord even "some weight" to Dr. Ahmed's opinion in the face of
7  these discrepancies, however, lacks reasonable support. The ALJ was on stronger ground in
8  according some weight to Dr. Doddy's assessment. In contrast to Dr. Ahmed, Dr. Doddy stated
9  that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, poor
10 ventilation, etc. AR 308. She also recognized Dr. Prabhu's differing opinion regarding
11 Plaintiff's residual functional capacity. She justified her assessment by stating that it was
12 supported by the objective evidence.
13      None of the physicians who opined on Plaintiff's residual functional capacity prior to
14 September 30, 2010 provided clear and well supported explanations for their opinions regarding
15 Plaintiff's residual functional capacity. Both Dr. Prabhu and Dr. Christensen provided residual
16 functional capacity assessments of Plaintiff in 2015. Dr. Prabhu indicated in his assessment that
17 Plaintiff had the ability to sit, stand or walk for time periods that could be consistent with the
18 ability to perform sedentary work. He stated, however, that Plaintiff gets short of breath on
19 minimal exertion due to asthma and COPD. AR 706. He repeated under each checklist topic
20 that Plaintiff was limited by shortness of breath due to asthma and COPD, and noted that he
21 often had asthma attacks. AR 701-710. Dr. Christensen similarly stated in his May 27, 2015
22 assessment that Plaintiff had limitations due to breathing, asthma, sinusitis, and that he had
23 severe asthma. AR 834. This arguably explains the basis for his assessment that Plaintiff could
24 stand or walk for about two hours in an 8-hour workday, and sit for about six hours in 8-hour
25 workday, but did not have a total daily work capacity of over six hours. AR 833. The main
26 difference between Dr. Prabhu's and Dr. Christensen's assessments (made several years after
27 Plaintiff's last date insured) and the second ALJ's assessment is that the ALJ found that Plaintiff
28 was not substantially limited by his asthma symptoms and was, therefore, able to work. In any

event, the expert medical opinion evidence in this case was not conclusive for or against a finding of disability. If the ALJ had properly discounted Plaintiff's credibility regarding the severity of his symptoms, then the ALJ could have concluded that Plaintiff was able to work, notwithstanding Dr. Prabhu's May 18, 2009 opinion that he was totally disabled.

**V. Whether this case should be remanded for an award of benefits or for further administrative proceedings.**

The Ninth Circuit has established a three-part credit-as-true standard which must be satisfied in order to remand a case to the Social Security Administration with instructions to calculate and award benefits. The test requires the court to find that (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence was credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d at 1020 (citing *Ryan v. Commissioner of Social. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). *Garrison* states that it may be an abuse of discretion not to remand with direction to make payment when all three conditions are met. The court stated, however, that the rule envisions some flexibility and the case should be remanded for further proceedings if an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Id.* at 1020–21. In *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101–02 (9th Cir. 2014), the court stated that even when the elements of the credit-as-true rule are present, the decision to remand for additional evidence or simply to award benefits is in the discretion of the court.

The record in this case has been fully developed. A second remand of this case for further administrative findings would serve no useful purpose. The ALJ failed to provide legally sufficient reasons in his November 2015 decision for rejecting the credibility of Plaintiff's testimony regarding the severity of his asthma symptoms and limitations. Crediting Plaintiff's

testimony as true requires a finding that he was disabled from the onset of his severe asthma symptoms on or about July 1, 2008 through his last date insured on September 30, 2010.

## CONCLUSION

Plaintiff met his burden to show that he was disabled within the meaning of the Social Security Act from July 1, 2008 through September 30, 2010. The ALJ failed to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his symptoms and limitations which, if accepted, requires a finding of disability during the relevant time period. Accordingly,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal or Remand (ECF No. 20) be **granted,** and that Defendant's Cross-Motion to Affirm (ECF No. 23) be **denied.**

**IT IS FURTHER RECOMMENDED** that this matter be remanded to the Social Security Administration with instructions to calculate and pay disability benefits to the Plaintiff.

## NOTICE

Pursuant to Local Rule IB 3–2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

Dated this 8th of July, 2019.

_____
GEORGE FOLEY, JR.
UNITED STATES MAGISTRATE JUDGE